Good morning. This is an appeal from the Board of Patent Appeals and Interferences. The issue is whether the Bilski patent application claims a process that is provided for in 35 U.S.C. Section 101. In other words, does the Bilski patent application claim statutory subject matter? The Bilski patent claims a business method. No apparatus is necessarily required to practice the Bilski method, although certain dependent claims, those referring to the Monte Carlo method, would be more easily practiced with a computer. But we're concerned only with Claim 1, right? Because 2 to 11 were not argued separately. That is true, Your Honor, except that in the meantime, there has been some decision that came down a week ago, and it seems to me it's only fair that we could also argue some of our dependent claims in view of that decision, namely the Comiskey decision. In any event, Your Honor. Since you raised the Comiskey decision, you don't have to address it immediately, but I hope you would soon address the question of what effect, in your view, Comiskey has on this case. Yes. And with respect principally to Claim 1 rather than the dependent claims. Right. And I will get to that, Your Honor. Very good. The claims are directed to a method of managing consumption risk costs. For example, weather-related, price-resist, price- I read this, and I don't see the mental process. Am I wrong? Am I missing something? No, I would agree with you, Your Honor, although every step in here may have some thought behind it. I mean, there's no action in the human body that doesn't first take place with a thought. But the transactions, initiating a series of transactions, those are possibly physical steps, but not mental steps. That is correct, Your Honor. They involve communication and negotiation. What about identifying market participants? That involves communication with market participants to find out whether they would have a risk position that would be acceptable and useful in putting together the deal. So would you suggest that to the extent there's any mental component of that, it's kind of like selecting a chemical from the periodic table that's suitable for use in a chemical process? Indeed, Your Honor. And as such, that wouldn't be a mental process like in the Comiskey case? Indeed. What's the mental process in NRA Comiskey's Claim 1? The mental process, I guess, is resolving a conflict. As I understand Comiskey's Claim 1, it's an arbitration method. As opposed to a hedging method. What's the difference? As opposed to specific physical steps of negotiating, contacting consumers. Right, and physical steps in both Claim 1 and both cases, right? I suppose there are physical steps in Comiskey, but... Well, have to be. I mean, you've got to find an arbitration place, a room to arbitrate, find an arbitrator. One of the differences here is that there's an actual industrial effect. Energy is going to be transferred from one place to another. The claim says sold. Right, well, money is going to be transferred from one hand to the other in Comiskey at the end. I don't know... I mean, you have an arbitral decision. I mean, something is... Somebody either gets to keep the money or the money moves. Indeed. So I'm still not seeing the difference. Well, let me say that I want to argue also that the Comiskey decision was wrong and should have been decided the way it was. That's something you addressed in bank court, right? Because we're bound, this panel is bound by Comiskey, if it applies. Well, I suppose the panel has a decision as to whether to follow its decision in State Street or its decision in Comiskey. I mean, in State Street, the court made rather plain that there should be no encumbrances upon Section 101. Comiskey says State Street has passed its muster because it's an idea or a mental process or whatever hooked up to a machine, to some other form of... Indeed, that's what they said, but the Supreme Court has never, never taken the position that a process has to be hooked up to a machine in order to be a process under... But they've never said that that might not be the rule. Indeed, but they've never... They've also suggested in the Chattanooga case that it would be wrong for the court to put encumbrances upon Section 101. And it's stated in the State Street case... Well, it would be wrong to put the wrong encumbrances on. The Supreme Court has said out of both sides of its court, 101 is not literal. So when 101 says any process, the Supreme Court said, no, that's not true. Well, they said that... It could be a process. Excuse me. They said that in the, I believe, the Fluke case. But in the Deere case and in the Benson case and in footnote 9 of the Fluke case, I think they made very clear that they were not incorporating the prior decisions into this... No, they said, of course, if something transforms subject matter, that's easy. It's a process. And if something is so deeply embedded in a machine that it's really the machine and not the algorithm, then that's patentable. But they've said, we're not saying that that's all. It could be something else. Indeed. And I'm saying that this is something else. This is a method. It has physical steps. There's no... Assuming for purposes of argument that this case can be distinguished from Comiskey, right? It could be, because if you look at what I think is probably the fundamental holding of Comiskey, is that a process claim reciting an abstract idea. Okay? It has to recite an abstract idea. Where are you in the opinion? Oh, I was looking at my notes, Your Honor. If you look, I have page 17 of the Slip of Pain, the one sent out by the VNA. Yeah, that's right. About two-thirds of the way down, that's the letters that you're... In that context, the Supreme Court has held that a claim reciting an algorithm or abstract idea can state statutory subject matter only if, as employed in the process, it is invited in, operates on, transform, or otherwise involves another class of statutory subject matter. As best I can see, the support for that is footnote 9 of Fluke, which doesn't support it, because the last sentence of footnote 9 of Fluke states, As in Benson, we assume that the valid process patent may issue even if it does not meet one of these qualifications of our earlier precedents. In any event, the claims of the Bilski patent, the claim of the Bilski patent, does not recite an abstract method. It recites a series of physical steps that achieve a practical result. But aren't you going to preempt wholly the use of the concept of hedging by this claim? No, Your Honor, I wouldn't. There's many forms of hedging. There's insurance contracts. There are futures contracts. There's all kinds of combinations of things that can be considered hedging. But this is not limited. Is this limited to energy? But claim one is not limited to energy. It's limited to commodities. Any commodity. Commodities, yes. It would be a very sophisticated way of a wheat farmer out in Kansas getting rid of his crop in advance. Same idea, worry about the weather. This year's a good year for wheat. The farmer worries about the weather. This year's a good year for wheat. The Bilski claims do not recite an abstract idea. The steps of the Bilski cannot simply be thought. They require physical activity. The same is true in Comiskey. But a different kind of physical activity. If you had your preference, wouldn't you like to retreat to AT&T, as you interpret it, to mean that if you have a useful concrete result in your process, it constitutes statutory subject matter? Absolutely, Your Honor. And then the question is whether or not that interpretation of AT&T remains a correct interpretation in the light of the gloss put on AT&T from your perspective by Comiskey. Correct, Your Honor. Respectfully urge the Board to be reversed. Very well. Thank you, Mr. Henson. Mr. Chin. Thank you, Your Honor. May it please the Court. In evaluating what may qualify as a Section 101 process, this Court's recent opinion in Comiskey provides a very common sense and workable test that's consistent with all of the case law. Let me ask you this question, because it wasn't clear from your letter to us what exact position the solicitor takes with respect to Comiskey, and in particular, regardless of what effect Comiskey may have on this case, do you think Comiskey, do you, the solicitor, believe that Comiskey states the correct test and is analytically correct, or do you think that regardless of the effect of Comiskey on this case, that Comiskey itself has flaws that you think indicate that it should have been written in a different way? I think you understand the question. We do believe that the principles that Comiskey announces are sound, analytically sound, and are supported by the case law. By that, you mean something like, for example, mental processes should be unpatentable. Mental processes, that's what Benson tells us. Okay, so in Comiskey, is that a mental process claim, the way the office would construe them? Well... What's the mental process part of the Comiskey claim? To me, there's one, it depends on how you define mental process. To me, when you look at the last step residing in the Comiskey claim, you will see that some human arbitrator has to go through a mental exercise to determine what should be the arbitration award for a decision. However, if you look at all the other steps that go through Comiskey, what I see are physical actions going on, not purely mental internal exercises going on. You think the portion of the Comiskey claim, just so I understand it, that involves a mental process is determining an award or a decision that is final and binding. That is a common understanding of what mental process is, yes. Okay, so you think that that provision dominates the claim such that everything else is insignificant post- or pre-solution activity, and as such would still leave the claim unpatentable. No, I don't think so, Your Honor, because when I look at Comiskey, I see all these human actions that are going on that just can't be disregarded. When you are requiring an enrollee to register himself and his legal document into a mandatory arbitration system, that is a human act. When you are conducting an arbitration, that arbitrator is not just having an internal exercise there, just like a district court judge when he or she is conducting a trial that necessarily requires all kinds of physical actions and conduct and interrelations between various people. Those aren't purely mental processes, and that is the concern. One of the causes of concern we have with the Comiskey decision is its usage of the term mental process, and what does that term really mean. When we look at the facts of Comiskey, we know that mental process could very well mean any kind of human action that's driven by a mental thought. For example, in the lab court dissent, Justice Breyer notes that all human actions involve mental process. And then if you also look at the Comiskey claim, there's all kinds of human actions going on. If you look at the Schrader claim, which was a method for conducting auctions, you'll see that there's the actual human act of entering all of these bids into records and then physically grouping or regrouping those bids for the purposes of the auction. Underlying the physical steps, both Schrader and it would seem in Bilski, there is some mental process at work. For example, if you're in Bilski, you're assessing a weather. You're making a guess, a bet, right, about what the future weather will be. So you're analyzing or somehow you have to be putting into your brain. So there are some mental processes that are happening in connection with the physical conduct. Exactly. In the arbitration, somebody has to decide what kind of argument to make in the arbitration. Somebody has to think about how they're going to present the case to the arbitrator. Just like someone that's gambling on football games has to make some kind of guess or bet on which team is going to prevail. Maybe to help us a little bit, the way in which the board, if you will, presented Bilski to us was with this prayer for guidance. You know, 26, 28 issues they'd like in the Bilski opinion. They said our examiners need guidance. We need to know how to deal with this situation because the office hadn't been consistent, you know, straight through. Let me ask you this question. Is the opinion in Ray Kaminsky enough? Can your examiners now move forward? Are you satisfied in dealing with business method patents? Not quite, Your Honor. I say not quite because what I can foresee is future disputes and also potentially years of litigation over trying to find a dividing line between what would be a so-called patent-eligible business method versus a so-called patent-ineligible mental process. It just is going to create a litigation issue that we don't think needs to be there. So to cut to the chase, how would you have reformulated the test for purposes of explaining both Kaminsky and then extrapolating to this case? I think what was just discussed here, page 17, is a very fair recitation of what the law is where it says, and it was already discussed earlier, the Supreme Court has held that a claim reciting an algorithm or abstract idea can state statutory subject matter only if, as employed in the process, it is embodied in, operates on, transforms, or otherwise involves another class of statutory subject matter. Do we have an algorithm in this case? Our case? No. Was there an algorithm in N. Ray Kaminsky? No. Was there an abstract idea in N. Ray Kaminsky? Yes. Abstract idea? Well, there is an abstract idea underlying what is going on. There is an abstract idea underlying every idea. Exactly. So I'm not certain that this language that you're talking to me about and the opinion isn't simply dictum, it's describing what it thinks the precedent has held. I think what the precedent has held is that a statutory 101 process is either tied to an apparatus or transforms subject matter to a different state or thing. That is what the Supreme Court has given us. Yeah, but the problem is the Supreme Court in what is 709 in Fluke said something else might pass the test. That's true. And then you have to understand what was it that the Supreme Court was thinking about when it said that. In those cases, Benson and Fluke, they were looking at a relatively young technological industry of computer programming. And they clearly came very close to shutting the door on computer programming but stopped short because they could not see how computer programming fit within a statutory process. So instead of completely foreclosing all computer programming from the patent system, they instead held open the door by saying, okay, this is a very young industry. We want to be very careful here not to freeze the patent system to just old technologies. We want to make sure that the patent system is still, can accommodate new onrushing technologies. That's what- Well, that certainly means any, you know, you'd get at least a B plus in law school for reading those cases that way. But that's not meant to say that there might not be, notwithstanding Justice Breyer, there might be something else that could pass Moscow. There might be something else, but it would have to be something technological. And what we have here in Bilski is not that. Are you saying there should be a technological arts exception to patentable subject matter? There should be a technological arts exception or that should govern our interpretation of everything under patentable subject matter? I'm saying essentially that is how I read the Comiskey opinion. No, but I want to know, are you suggesting that the Supreme Court or otherwise the Constitution imposes a technological arts exception or limitation on patentable subject matter? I, that is our, yes, we agree with what Comiskey says. When the Comiskey opinion says that the Constitution in Article 1, Section 8 limits the subject matter eligible for the patent system to be useful arts. What about design patents? Have we just rendered them all unconstitutional? Design patents must be ornamental, not functional. That's clearly not in your definition of technological arts. I'd have to think about that, but of course we wouldn't hold, we wouldn't expect that design patents would be. How do design patents comport with that language in Comiskey? Well, design patent system seems to be going for something a little different than what utility patent systems do. Well, the Constitution gives Congress its only power to enact patent laws, right? That's where they get the power. That's right. And you just told me how I should interpret Article 1, Section 8, Clause 8, and that interpretation, it seems to me, would directly conflict with all design patent laws we know of. Congress did an oops if we leave that interpretation in place? Your Honor, I'm sorry, I just have to think about that more. No problem. Can we go back for just one second to your interpretation of what mental process means under Comiskey? What about a chiropractor adjusting somebody's back? Mental process in the way you believe Comiskey defines mental processes? In the way that Comiskey defines mental processes, yes, the answer is yes. Chiropractor adjusting someone's back is a mental process. Surgeon performing surgery on someone is a mental process. Well, again, we'd have to look and see what kind of technology is involved in performing that surgical procedure there. No computers or machines. How about that? That'll help you out. No computers or machines. If you're putting a hand on someone's forehead, that's not inside the patent system. Mr. Chan, you mentioned earlier when we asked you, you know, whether N. Ray Comiskey gives the patent office what it felt it needed. Would it make, and you said you thought one of the potential problems coming out of N. Ray Comiskey is to sort of figure out what a mental process is because the language is used. Is it any easier to figure out what an abstract idea is? For example, if the language that you quoted from the Comiskey opinion in this context, the Supreme Court has held, assuming that's correct, if instead of algorithm or abstract idea, it said algorithm or mental process. I mean, that would say a mental process states subject matter only if it's transformed or used as a machine. Why would the patent office have an easier time analyzing whether an idea is abstract or not as opposed to deciding whether or not a process is essentially a bare mental process? Well, for us, when we think of mental process or when an applicant thinks of mental process, they're going to be thinking perhaps about something that's truly purely mental in terms of something that's going on inside the mind. It doesn't require any kind of physical activity. I think when we're talking about the abstract idea concept, we're not talking about necessarily just a pure abstraction because if you look at what was going on in cases like Benson or Fluke, those cases weren't pure abstractions. There was an actual process, a machine-implemented process going on there where you were converting binary coded decimal numerals into pure binary numbers. But nevertheless, that fell outside because of the abstract idea conception. So we're not talking about claims that are pure abstractions. We're talking about claims that essentially lock up an abstract concept. And that's why when we look at the Bilski claim, we see it as a concept claim. It's not physically instantiated in any particular manner. It's a disembodied idea. It is a disembodied idea. And because of that, when we look at a case like Allipat, they were trying to judge whether that claim was for a disembodied mathematical concept, that was the words of this court, or was it some kind of practical application. In that instance, it was a practical application because it was a machine there. Well, to help me in terms of what, as you know very well, and one panel is bound by a previous panel's decision. So if the claim one in In re Comiskey cites the metal process, we all know that there are a lot of physical activity going on in the claim. Then why wouldn't the claim in Bilski claim one also be a metal process as defined in the earlier case? It is. It is a metal process in the same way. If I accept the construct in the earlier case. Right. And the question is what other way could you read Comiskey opinion when you see that there are all these human actions going on, just like in the Schrader claim there's human actions going on. Just like in the Meyer case where there was testing of a patient going on there and at the same time those testing actions were ultimately, the whole claim was deemed to be a metal process for a neurologist to follow. So once again, mental process, when you read the facts of these cases, appear to mean something more than truly an internal mental exercise. And that's where I have difficulty. One can speak generally, as you just did, of the category of cases as being described by, in shorthand, disembodied ideas. But obviously that's a matter of characterization that somehow, I have a hard time at least trying to figure out when it's embodied and when it's not embodied. To go back to the chiropractor, I think that was Judge Moore's example. I think you said a process for treating, even let's suppose it's a brand new process. Some chiropractor comes up with a way of treating the lower back that no one's ever done before and treats it. But just with his hands. Doesn't use any machine or drug or anything else. Is that a disembodied idea? Has to be affected by use of the hands in a certain way, but that can't be patented or it can, do you think? Well, let me agree that now we're getting to difficult line drawing questions here. But at the same time, when we are talking about human actions with our hands, we're now seemingly falling outside of the technological inquiry where the patent system seems to be reserved for technology-based solutions. And now we are dealing with some kind of human skill. You know, throwing a baseball, throwing a curveball. Are we going to give patents on that? You're not asking for that test. I mean, that's what your examiner did in this case, right? The examiner in Bilski threw the claims out not related to technology. That's true. And I really didn't understand the patent office to want to come back in and ask us to reinvent that test. I think what happened was with the technological arts test and why that was rejected by the board was because it was, at that time, ill-defined. No one really knew what the technological arts test meant. My point was, for purposes of us deciding this case, I didn't understand your brief to be asking us to adopt a technological arts test, right? No. We're looking to the principles enunciated by the Supreme Court, as we pointed out in our brief, and we think that it's entirely consistent with what Comiskey's restatement of the process eligibility test is in the sense that a process must be tied to one of the other three statutory classes of subject matter. Because when you talk, obviously the Supreme Court test is a process must be either machine implemented or transform some kind of subject matter to a different state of thing. And that could be either a composition of matter or... Well, everybody knows that there's no problem with a statutory subject matter if something actually transforms the nature of something or if the machine element is so dominant that it sort of overwhelms what's going on in the algorithm or in the abstract idea. In terms of the chiropractor example, is there a mental process there? Has the doctor, as Judge Bryson said, used his hands? The doctor has figured out that there is one particular point, like in acupuncture, if you will, one point that if he touches it with one finger with exactly the right amount of force, aha, there is relief. Right. Again, there's a mental judgment going on on how far to twist someone's hips or something like that. But the touching itself and indeed the ultimate result may be that the back is either temporarily or permanently changed in its alignment or whatever. That sounds like a change in manipulation of matter, doesn't it? It certainly sounds like more than simply sitting, leaning back in your chair and thinking about ideas that would be pure mental processes. Why wouldn't that be statutory subject matter? Well, first of all, I agree with you that it's not purely sitting back in your chair and thinking about it. That's why I feel like this mental process characterization could possibly be a bit of a misnomer. Right, but even if you call it an abstract idea, and obviously everything has the idea component in it, but why isn't this, in terms of the language on page 17, why doesn't this operate on and transform the body? Or if it's not the body, then it's some other object that you're transforming. You're just transforming it with your hands. In other words, you can't cross the line, presumably, to statutory subject matter simply because instead of your hand, you put a boxing glove on and you use that to punch in the right places in the back. Now you're using a pretty simple machine, but that wouldn't cross the line, would it? Well, for purposes of 101, to try to understand what is inside or outside, obviously now you're using some kind of device to aid the act of trying to heal someone. So now we get to some kind of process that really is within some kind of application of technology. I think that's what Comiskey is trying to tell us, which is the application of some kind of technical ingenuity. That's what the patent system is for. And there's going to be other kinds of innovations in our world. Maybe it's, say, an education, a new teaching method, or a new way of selecting a jury, a new way of cross-examining a witness, a better way of writing a legal brief. But those things aren't inside the patent system. Do you interpret Comiskey as creating a rule of law by which sports moves would be now unpatentable subject matter? That would be something we'd have to look at more and think about, because when I go back to the pitching a curveball example, one could argue that you are now operating on that baseball to try to make it do something. But you're doing it with your hands. So you'd, not to be frivolous about it, but I suppose you'd be drawing a distinction perhaps between the curveball and the so-called scuffball, in which the pitcher uses his belt buckle to scuff up the ball and gets the ball to move. You've transformed that ball into a different sphere. Yeah, by use of a machine. By use of a manufacturer, absolutely. But I'm not saying that sports moves are eligible. I'm just saying how one could make an argument for it. And one extra dimension of the... I don't want to try to say that there are necessarily two different things, pitching a baseball versus a chiropractor, but what you're working on as a chiropractor is arguably a law of nature. You're working on a human being. You're not working on a true composition of matter. That would apply, it seems to me, to just about all medical processes. Suppose, for example, that you're a physician and you discover that taking out the appendix of a young person will ensure, 100% guarantee that that person will never have pancreatic cancer, I suppose. I mean, can you get a patent on a method for defeating pancreatic cancer consisting of taking out the appendix? I mean, it's a law of nature that you've just discovered, something that is a part of the operation of the human body. Well, I would hope that procedure is somehow machine-implemented. Well, I mean, machine-implemented, but only to the extent that you have to open the person up to get at the appendix. That's true. But the use of a scalpel would be enough, you think, to make that a patentable subject matter? Again, that would be... I feel like my understanding of the law as it stands is that the requirement of some kind of technical tool would be what the patent system is reserved for. But if you had a claim drawn to a method for preventing pancreatic cancer by performing the step of removing the appendix, no machine cited in Claim 1, that would funk the Enright-Pomisky test, wouldn't it? I think it would depend, because I think removal of appendix, even though a particular instrument isn't cited, I think almost necessarily requires some kind of instrument to be used in order to perform that procedure. Anne. Counsel, would you suggest that abstract idea is broader, for example, than mental processes, that mental processes, mathematical algorithms, and disembodied concepts are all forms of abstract ideas that would be accepted from patentability? That's my understanding, and that's why I feel... And so perhaps Comiskey chose words poorly because they framed entirely in terms of abstract idea rather than mental process. This would be an easier situation for the office. Well, I will say that the Comiskey opinion does talk about abstract concepts and talks about how abstract concepts have to be tied to one of the other three statutory subject matter classes, but then goes on in the application of it to talk more about mental processes. So we feel like there is already something here tying abstract concepts to one of the other three statutory classes, regardless of whether it's a process or one of the other three. But nevertheless, I believe that more clarification on that point would be very, very useful. And do you think that clarification would have to come from the in-bank court at this point, or do you think we could, in this case, rule, for example, that this is an abstract idea and enunciate the principles under which we think that's so, or do you think that we're barred from Comiskey from doing that? No, I think you can build on what we have here in the Comiskey opinion and clarify some of these points. Another point that I think would be helpful to clarify is in this page 17 where it talks about an algorithm that is, or an abstract idea that is, quote, embodied and operates on, transforms, or otherwise involves another class of statutory subject matter. I understand why the court may have wanted to use that catch-all phrase, otherwise involves, but I think what that term right there could also, because it's ambiguous, introduce more litigation and uncertainty in the patent examination process. And I think the point that we would want this court to clarify is that that term, otherwise involves, has to be something that's on par with the other three items that are discussed in that sentence, that is, embodied in, operates on, or transforms. For example, when I go back to Schrader, that was a method of conducting an auction where you bid on a bunch of items, but those items didn't transform anything or they weren't operated on, and the recitation of items in the claim wasn't enough to make that somehow a statutory process. To come back to your response to Judge Moore in terms of where we should proceed in deciding this case, I had earlier understood you to say that if Claim 1 and NRA Comiskey was a metal process, then Claim 1 and Bilski is also a metal process. I asked you that question. So you would think that if we have a metal process here and it's not connected up to other statutory subject matter, it flunks the test under NRA Comiskey. One could decide this case by saying, we have in this case, just as according to the definition of a metal process in NRA Comiskey, we've got a metal process, too, and it's nude, therefore it failed. I understood you to say, when I asked you earlier, that would be a legitimate result in this case, I think you were saying to Judge Moore you'd also like to see us make this claim fail on another ground, which is that it's an abstract idea that isn't connected to statutory subject matter. Correct. Yes. You'd like an alternative ground, if you will. That's right. And we've set out those two lines of thinking in our brief as did the Board in this decision. Number one, it's not a statutory process. Number two, it's nothing more than a disembodied abstract idea. And which of those do you think that Comiskey dictated? I think Comiskey... I read Comiskey as being more about the statutory process because it interpreted the case law of what qualifies as a statutory process. It read the Supreme Court opinions. It noted that in 1952, the Patent Act did not change the meaning of the term process as that term had been defined by the courts, the statutory meaning of process. And it wasn't just the ordinary dictionary definition. Fluke and Benson foreclosed that kind of understanding. And so, therefore, that reading of the Supreme Court as restated in Comiskey's tying the process to one of the three statutory categories, and because Comiskey wasn't tied to any of those and was broad enough that it could be a completely purely human-driven arbitration, therefore, it didn't satisfy Section 101. But whether you look at it as... Or do you walk up to a case saying, oh, do I have statutory subject matter here? Or do I have an algorithm or an abstract idea? The algorithm and the abstract idea are simply not statutory subject matter, right? Chicken and egg. Right. You're right in the sense that these two grounds are closely tied together. Right. But you can have an abstract idea or possibly an algorithm, certainly have an algorithm that produces a useful result, passes constitutional muster. Doesn't the Constitution only require that the process have utility? Not in how I read the Comiskey opinion. The Comiskey opinion... Well, I'm just talking about looking at the Supreme Court because did the Constitution say that a bare algorithm can't be patented? Or did the Supreme Court say it can't be patented because it's not statutory subject matter? I posit you on a highly useful algorithm. Right. The framers didn't take it away from patentability. The Congress took it away through the Supreme Court's interpretation of one-on-one. Isn't that right? Right. So that's why I say to say, well, which is the proper way of looking at a case like Comiskey? Was the analysis through, is it a statutory process, or did you start focusing right away on whether it was an abstract concept? Seems to me all still under the one-on-one umbrella. It is under the one-on-one umbrella. The Comiskey opinion doesn't divide out the two analyses and sort of combines them together by saying... Well, nor do the Supreme Court cases. Well, arguably in Diamond v. Deere, the Supreme Court initially went through the exercise of whether that industrial process of curing synthetic rubber, was that a section one-on-one process? And it said, yes, it is, because it transforms that uncured synthetic rubber into a different state of thing. And so under all of its case law, of course that's a one-on-one process, but that doesn't end the inquiry. Now they have to look and see whether the claim that presided this mathematical algorithm, whether it in fact was for practical application, and ultimately concluded that yes. To come back to the where do we go from here question, it's unusual that you have an elephant in the room the size of Comiskey right, you know, a week before this case comes up. The way the cases were lined up, it's probably not surprising. Let's assume that this panel were to say that it didn't feel that it needed to apply Enright Comiskey here, or it applied Enright Comiskey and then went on and said there's an alternative ground for sustaining the board, namely that this is an abstract idea that's not embodied in a machine. And let's assume that there is then no in-bank review of either case. And going forward, wouldn't the patent office have some difficulty in trying to decide which business method presented a metal process and which business method presented an abstract idea, given the fact that we can't make any distinction between the claims in the two cases? What I'm trying to get at is isn't it almost not a good world for there to be two analytic constructs issued by two different panels that are floating in the marketplace, if you will, with the examiners trying to figure out which of the two tests they are supposed to use? Well, in our view, we can have both. And we can have an opinion from this court in this appeal that talks about both. One that clarifies what happened in Comiskey and explain why it also necessarily controls this case. And secondly, also talk about the abstract idea. I would say, however, that between the two, it would appear that the more straightforward approach and analytical approach in a workable test would be more about how do you understand what is a statutory process under 101 rather than talking about whether you have a real practical application of an abstract idea or not. Would that be because things like mathematical algorithms aren't the type of inventions the Constitution anticipated should fall within the patent rights? Or the type of invention that Congress anticipated should fall within the patent rights? Mathematical algorithms or these abstract ideas like this one might be. Is it because you think... Because clearly the statutory language in any process is really, really broad. I understand the legislative history where they say that anything under the sun made by man is directed towards articles, compositions, but that doesn't suggest that it shouldn't apply to process. There is no legislative history that I can find for 101 that suggests process is meant to be limited to exclude certain kinds of things. I'm not missing anything. I agree with you about the legislative history, but at the same time, when Deere specifically says that we interpret process post-1952 the exact same way we interpret process pre-1952, and that's what also the Warmerdam, or I believe it was the Schrader case, said that, as did the Comiskey opinion. So I feel like there is legal authority to say that process has a very well-established interpretation, and that's the interpretation that we believe that this Court should reaffirm, and it appears to have already reaffirmed. Short of a technological breakthrough. Excuse me? Short of some phenomenal breakthrough in science or in the whole world. You're going to leave that to Douglas to accept. There may be a day tomorrow or 100 years from now where there's a technology that doesn't fit within the current understanding by the Supreme Court and as we state in Comiskey. But you'd get rid of most business method patents unless they were jammed through a machine in a very meaningful way, right? The answer is yes. But bookmakers... Case-by-case basis, Your Honor. Well, no, but if you just think about it... Most of those cases are going to come out the same way, it sounds like. Yeah, you're right, in the sense that the patent system is about, what I'm talking in general here, a technology-based inquiry, and that's what the patent system is reserved for, and that's what these tests support and teach us when it says that a process has to be tied to one of these other three categories, that a process has to be machine implemented or transformed subject matter to a different state or thing. All of that is technology-based. Process wasn't meant or shouldn't be read to mean that it just freely roams and is a huge extension of patent protection into every possible field of human endeavor that doesn't involve any of the other three categories. Why does running the idea through the machine necessarily save the subject matter under 101 when you could have run the concept through a human mind and it just would have taken 14 weeks to get the answer? Why should something become patentable subject matter just because you can have the answer in the flick of the fingers instead of a week later? Well, that would be a pure mental step, what you're referring to, a pure mental algorithm versus a technology-based solution to whatever the problem is. For example, a calculator. A calculator, we're going to give you a patent, but a new way of adding up numbers in your head, we're not going to give that to you. I think Judge Moore had a question. Thank you. Let me ask one more question that may be unduly simplistic, but just to make sure I understand your position. This may ride right past some of the nuances you've been setting forth, but if you were to take the language on page 17 of Comiskey that we've been talking about and take out the otherwise involves language, would that state the test that you think is the right test to apply? That's part one of my question, and I have another part. That refers to abstract idea and embodied in, operates on, and we say, or transforms in other classes. I think there would be a fair reading or synthesis of the test for Section 101. Now if we then, after this passage in this opinion, we've talked about the references to mental processes, if we changed the usage of that language to abstract idea and made the requisite adjustments in language, do you think that that would solve what you perceive as some of the problems with the articulation in Comiskey? I don't want to say there's problems, but I would say it clarifies. My term, not yours, but do you think that would clearly state what you understand and advocate as the proper rule? It would clarify it. It certainly would, but I would go even a step further in the sense that what the Comiskey opinion was trying to do here was provide a restatement of the Supreme Court's test. And to me, that restatement for 101 process is, 101 process has to be embodied in, transformed, and operate on one of the other three classes of statutory subject matter. Period. But that's what, Judge, that's what you would have fixed with the first change by taking otherwise involved out, right? Yes, that's true. But you'd throw that in a few more times in the opinion to make sure that... Repeat it two or three times. Right. Yeah, right, but I'm saying... Put it in italics and bold. I'm saying what's happening here in this sentence, though, is when you look at the first clause of the sentence talking about reciting an algorithm or abstract idea, to me, when I look at that, I think of that as, you know, it's easier to understand all this if you divide out the two modes of analysis. One is you use statutory section 101 process as it's understood by the case law. Well, that's what he's talking about. In number two, are you claiming nothing more than an abstract idea, or did you, in fact, reduce that abstract idea to a practical application? And so, to me, those are two... Are you trying to say that you can have an abstract idea that is statutory subject matter, but you're going to throw it out because it's abstract? I'm... Well, for example, when you look at Benson and Fluke, you could say, yes, those were machine-implemented methods of converting data signals into one form or another, and so, yes, maybe that satisfies that transformation test or that machine-implementation test, but then you look over here to the second mode and say that the claims were so abstract and sweeping as to be nothing more than patented on the formulas or the algorithms themselves, and that's a second mode of analysis. And so when this sentence kind of brings them together in one, I think it could potentially be a more complex exercise for examiners and applicants to understand where it's much cleaner to say, as the Supreme Court did, okay, did you first qualify as a statutory process? Did you, in fact, are you a machine-implemented or are you transforming subject matter to a different state or thing? Period. And then the answer for Deere was yes. And so that's why I'm talking about... You contemplate a situation where you say, you ask the question, are you machine-oriented or do you transform subject matter? Yes, you do, but nonetheless, you still fail because you're too abstract. Right. Can you give me a hypothetical? Benson and Fluke. Benson was machine-implemented. Insignificant post-solution activity type of thing. And Fluke was insignificant post-solution activity. It was ultimately the court found that that was doing nothing more than solving a mathematical formula on a computer. And our case law has proliferated that to say pre- or during-solution activity that's insignificant would similarly be problematic. It's not just post. Yes, in terms of Deere... That goes back to whether you were sufficiently machine-oriented. Right. So if your machine is making, you know, really not doing much, right? Right. You're going to flunk the machine-oriented first statutory test that you gave me a minute ago. I think yes, and I think Comiskey sort of alludes to that when it cites Graham's later on in this opinion. Do we run into problems with AT&T, though, with this idea? Not at all, because AT&T is totally reconciled with this opinion because AT&T, that was a machine-implemented process. Moreover, it transformed data signals to a different state of thing, and it created a signal at the end that was useful for differential billing purposes. But if the machine turns out to be insignificant post-solution activity, you throw it out up front. Not sufficiently machine-oriented. That wasn't AT&T, but, right, the Comiskey opinion, I feel, gives us guidance when it sort of divides out the non-machine-implemented claims versus the ones that it found to arguably be limited to some kind of machine. I think we've exhausted our questioning, probably exhausted you as well. Thank you, Mr. Chen. Thank you, Your Honor. We respectfully request that the board be affirmed. Thank you. Thank you. Mr. Hanson, you have five minutes left, but we've given Mr. Chen a little extra time, so if you need a little extra, you feel free to take it. I'd like to address the constitutional question which was discussed during Mr. Chen's argument. If I remember, in Comiskey, they started out by saying there were bad monopolies granted by the queen and the king back in the period of time before the statute of monopolies, and therefore they jumped to the conclusion that somehow the framers of the United States Constitution decided that they were going to prevent back bad monopolies, and that's the way they crafted the constitutional provision, and they focused on the useful arts language in the Article I, Section 8, Clause 8, but what really eliminates the bad monopolies that were talked about and thought about are the language in ventures and discoveries, and if you go back to the Darcy case, which is discussed somewhat in the Comiskey opinion, that was a case in which evidently the queen had granted a right to make playing cards. Now, making playing cards is a useful art. The Darcy case struck down that monopoly not on a useful arts kind of argument, but on the fact that there was no invention, there was no, I think it was true in first inventors, so the United States Constitution does not provide a basis for interpreting Section 101. In fact, talking about the Constitution, the Constitution says Congress may pass a patent law, and the Congress has passed a patent law, and the Congress can change Section 101 any time it wants to, and it's interesting to note that with all the discussion of changes to the patent law going on right now, under the Constitution, can the Congress provide for the patent office to issue a patent on a useless thing? No, no, but we're not... Right, so you're basically saying what the Constitution, the Constitutional test is utility. That's right. If something's useful, it passes Constitutional muster, if Congress then wants to... But it also has to be an invention. It has to be this invention you discover. That's useful. Right. As far as the technological component test that came up during the discussion by Mr. Chen, in the Comiskey decision, they grabbed a sentence out of the Pollock case, I guess it's called, one sentence out of the Pollock case that suggested that there should be a technological innovation, that process is a technological innovation. The Pollock case had nothing to do with 101. It's pure over-predictive. The Pollock case had to do with 102G. But if you really want to know what Judge Newman, who wrote that case, thought technological innovation is, look to her dissent in the Schrader case, in which she felt that the Schrader case was a technological innovation. And just to get further to this case, the Bilski case, there is a technological aspect to this case because it's based upon the underlying technological science of statistics. With that, I rest. Thank you, and we thank both counsel.